# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

PATRICIA L. WILLIAMS,            )
                                 )
    Plaintiff,                  )
                                 )
v.                               )   Case No. CV406-019
                                 )
MICHAEL J. ASTRUE,[1]            )
Commissioner, Social Security    )
Administration,                  )
                                 )
    Defendant.                  )

## REPORT AND RECOMMENDATION

On March 7, 2002, Patricia L. Williams applied for a period of disability and disability insurance benefits pursuant to Sections 216(I) and 223 of the Social Security Act, claiming a disability onset date of March 3, 2000. Doc. 7 at 12. The Social Security Administration denied Williams' benefits application both initially and upon rehearing, prompting her to request a hearing before an Administrative Law Judge (ALJ). Id. Thereafter, the ALJ held two hearings before issuing a decision finding that Williams was not entitled to disability benefits. Id. After the Appeals

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Fed. R. Civ. P. 25(d)(1), he is automatically substituted for former Commissioner Jo Anne B. Barnhart as the defendant.

Council denied Williams' request for review, the ALJ's decision became the final order of the Social Security Commissioner. Id. at 4-6. She then filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the ALJ's decision. Doc. 1. For the reasons set forth below, the ALJ's decision should be **AFFIRMED**.

I.  **LEGAL PRINCIPLES**

    A.  **Standard of Review**

This Court conducts a narrow review of an ALJ's decision denying disability benefits. If the ALJ's decision is supported by substantial evidence and is based upon correct legal standards, the Court will affirm. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but is less than a preponderance," Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion," Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th

Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm even if the evidence preponderates against the Commissioner's findings. Id. at 1158–59 (quotation marks and citations omitted). The substitution of this Court's judgment for that of the Commissioner is not allowed. Barnes v. Sullivan, 932 F.2d 1356, 1357–58 (11th Cir. 1991).

### B. The Five-Step Test for Determining if a Claimant Qualifies for Disability Benefits

The Court's review in this case is controlled by the relevant Social Security Regulations, which set forth a five-step evaluation for determining whether a claimant qualifies for disability benefits. 20 C.F.R. § 404.1520; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

At step one, the claimant must prove that she has not engaged in substantial gainful activity. Jones, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. Id. Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled. Id. If not, she must

advance to step four, which requires her to prove her inability to perform her past relevant work. Id. If the claimant establishes that she cannot perform her past relevant work, then at stage five the burden shifts to the Commissioner to show that other work the claimant is capable of performing is available in the national economy in significant numbers. Id.

## II. DISCUSSION

Claimant Williams is a sixty-two-year-old female with a ninth grade education. Doc. 7 at 48, 74. Her past work experience includes work as a waitress.[2] Id. at 69. In her initial application for disability benefits, she listed numerous health problems, including back pain, diabetes, osteoarthritis, autoimmune hepatitis, and cirrhosis of the liver. Id. at 68.

Williams challenges the ALJ's decision on three grounds, arguing that

---

[2] The Court is aware that among the claimant's hearing exhibits were documents corresponding to a different Patricia Williams. Doc. 7 at 527–28. Apparently, claimant's physician inadvertently included health information about the wrong Patricia Williams in his response to the claimant's request for medical records. After the error was recognized at the hearing, claimant's attorney stated that she would remove the irrelevant information from the exhibits in the record. Id. at 506, 515, 527. She never did. Consequently, the ALJ's decision includes a few references to exhibits that do not correspond to the claimant in this case. The Court will exclude that irrelevant evidence from its analysis and will consider what, if any, impact that evidence had on the ALJ's decision.

the ALJ: (1) did not give proper consideration to the diagnoses of her physicians; (2) failed to consider the combined impact of her impairments; and (3) incorrectly determined that she could perform her past relevant work.

**A.     The ALJ's Consideration of Williams' Physicians**

William's first argument, which attacks the ALJ's step-three determination that her impairments did not automatically entitle her to receive disability benefits, stems from evidence submitted by three physicians. The first physician, Dr. James Snow, was her treating physician. A letter drafted by Snow for the Commissioner indicates that Williams suffers from hypertension, musculoskeletal pain, metabolic syndrome, diabetic neuropathy in both legs, autoimmune hepatitis, diabetes, chronic abdominal pain, and osteoporosis. Doc. 7 at 210–11. In that letter Dr. Snow opined that Williams' maladies precluded her from substantial gainful employment. Id.

The second physician who submitted evidence supporting Williams' claim, Dr. John Northrup, is a diagnostic specialist who performed a biopsy of Williams' liver. Id. at 213. He concluded that she suffered from

autoimmune liver disease, cirrhosis of the liver, diabetes, hypertension, gastroesophageal reflux disease, and colon polyps. Id. Like Dr. Snow, Dr. Northrup drafted a letter in which he opined that Williams is permanently disabled and unfit for gainful employment. Id.

Neither Dr. Snow nor Dr. Northrup testified before the ALJ. That task fell upon Dr. McKee Hargrett, who had examined Williams at least once, and sometimes twice, during the six weeks preceding the hearing. Id. at 530. Dr. Hargrett's testimony not only reiterated the health maladies reported by Drs. Snow and Northrup, it also included the additional observation that Williams' ankles were swelling enough to prevent her from staying on her feet for long time periods and were probably indicative of other health problems. Id. at 530–32. He also opined that Williams' ailments had rendered her disabled. Id. at 530.

The parts of Dr. Hargrett's testimony that bear most directly on the disposition of this case were his responses the ALJ's questions about Williams' capacity to carry out everyday activities like driving, cooking, cleaning, and sitting and standing for extended time periods. Id. at 540–41. In essence, Dr. Hargrett testified that Williams could likely carry out those

tasks, but not without exhibiting much fortitude and suffering a substantial strain. Id. For example, Dr. Hargrett stated that "[i]f she wanted to exhibit courage, she could wash the dishes." Id. at 541.

Pointing to the evidence generated by those three physicians, Williams argues that the ALJ's decision should be reversed because (1) there was no reason to discount the three physicians' evidence, and (2) Dr. Snow's diagnosis should be given controlling weight since he was Williams' treating physician. Doc. 13.

Despite the doctors' evidence, the ALJ concluded that Williams did not qualify for disability benefits. The ALJ began by pointing out that, pursuant to Social Security Opinion 96-2, the determination of disability was reserved to him, not the physicians. Therefore, the ALJ gave no weight to the doctors' personal observation that Williams was disabled. Doc. 7 at 14. Nevertheless, the ALJ did consider the medical evidence presented by all three doctors.

The ALJ acknowledged that the opinion of Williams' treating physician, Dr. Snow, would merit controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R § 404.1527(d)(2). However, while Dr. Snow was treating her autoimmune hepatitis at the Darien Family Care Center, Williams was repeatedly diagnosed with a normal neck, back, chest, and abdomen. Doc. 7 at 146, 149, 298, 309–19, 321–24, 329–39, 345–46. The Care Center found her to have no sensory deficits, no debilitating swelling, and no neurological deficiencies. Doc. 7 at 143, 151, 158–69, 355–83.

During the same period that the Darien Family Care Center treated Williams, she also received treatment at Candler Hospital, where her care providers found that she had clear lungs, no debilitating swelling in her extremities, and no neurological or sensory deficiencies. Id. at 386. Moreover, in August 2003, Dr. R. Neal Boswell performed a consultive exam and concluded that Williams could lift or carry 30 to 40 pounds occasionally and 20 pounds frequently. Id. at 204–06. He also reported that she could stand, walk, sit, push, pull, crouch, kneel, crawl, climb, and reach overhead without substantial limitations. Id. at 191–206. Thus, for purposes of 20 C.F.R § 404.1527(d)(2), both the evidence in Williams' case record and evidence provided by other physicians indicate that Dr. Snow's opinion

letter should not receive controlling weight.

The ALJ placed no evidentiary value on Dr. Hargrett's hearing testimony. The ALJ pointed out that Dr. Hargrett was not Williams' treating physician and that Dr. Hargrett's testimony about Williams' ability to perform everyday tasks was inconsistent with Williams' own testimony. For example, Dr. Hargrett testified that Williams could not cook, clean, or drive without putting forth a herculean effort, but Williams testified that she sometimes helped her husband cook and clean—although she also testified that she experienced pain and fatigue in performing those tasks. Doc. 7 at 507–11.

Although the Court might reach a different conclusion if it were deciding the issue <u>de novo</u>, under the substantial evidence test, the ALJ's decision should be affirmed. <u>See</u> <u>Crawford</u>, 363 F.3d at 1158–59. The opinion letters from Drs. Snow and Northup are inconsistent with medical records produced during the course of Williams' treatment at the Darien Family Care Center. And, a diagnosis submitted by an an outside consulting physician, Dr. Heard, supports the Care Center's records. Finally, the ALJ committed no error in refusing to place any evidentiary

value on Dr. Hargrett's testimony, which was not even consistent with the claimant's own testimony. Williams has not demonstrated that the ALJ applied the incorrect legal standard or misread the evidence in the record.

### B. The ALJ's Consideration of Williams' Combined Impairments.

Williams' second argument also attacks the AJL's step-three determination that her impairments did not automatically entitle her to receive disability benefits. She argues that the ALJ neglected to consider the impact of her combined ailments, especially her depression. Doc. 13 at 9. The legal basis for her argument is 20 C.F.R. §§ 404.1523, 416.923, which instruct the ALJ to consider "the combined effect of all [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Id.

Williams' argument is contradicted by the ALJ's decision. Not only did the ALJ recite his obligation to determine whether Williams had a disabling "impairment or combination of impairments," he also found that Williams suffered from numerous impairments. Doc. 7 at 16–18. The ALJ did not, however, find any impairment or combination of impairments that would automatically qualify Williams as disabled at step three of the five-

step evaluation set forth in 20 C.F.R. § 404.1520. Id. at 16. Although Williams may disagree with the ALJ's determination on this issue, the wording of the ALJ's decision demonstrates his consideration of the combined effect of Williams' impairments.

C.  **Williams' Ability to Perform Past Relevant Work**

Williams' final argument attacks the ALJ's finding that she could perform her past relevant work as a waitress, a determination made at step four of the five-step evaluation. Doc. 13 at 9. Williams bases her argument on the ALJ's promulgating the decision without first hearing testimony from her vocational expert. Id.

As the government correctly points out, at stage four the claimant bears the burden of proving that she is incapable of performing her past relevant work. 20 C.F.R. § 404.1512. If the claimant has failed to prove an impairment or combination of impairments that prevent her from performing her past relevant work, then no testimony from a vocational expert is needed. Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). Instead, after determining that a claimant can perform her past relevant work, the ALJ

need only explain how the claimant's residual functioning capacity compares to the demands or her past relevant work. Soc. Sec. Rul. 82-62. Here, the ALJ noted the record evidence that Williams possessed the capacity to perform unskilled light work, such as waiting tables, because that work did not require frequent heavy lifting, crouching, climbing, and kneeling. Doc. 7 at 17–19. Accordingly, the ALJ did not commit reversible error in not hearing testimony from the Williams' vocational expert.

## III. CONCLUSION

Substantial evidence supports the ALJ's decision to not give controlling weight to the three physicians cited by Williams, and the ALJ properly considered the combined effect of Williams' ailments and properly determined that she retained the residual functioning capacity to perform her past relevant work. Therefore, the ALJ's decision should be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED** this 29th day of **November 2007**.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA