IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PATRICIA L. WILLIAMS, )
 )
    Plaintiff, )
 )
v. )
 ) CASE NO. CV406-19
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security, )
 )
    Defendant. )
 )

## O R D E R

Before the Court are Plaintiff Patricia L. Williams's Complaint and the Magistrate Judge's Report and Recommendation, to which no objections have been filed. After a careful review of the file, the Court does not concur with the Magistrate Judge's Report and Recommendation, which recommends that this Court affirm the decision of the Social Security Commissioner ("the Commissioner"). Accordingly, this case is **REVERSED** and **REMANDED** for further consideration. The reasons for the Court's decision are set forth below.

### BACKGROUND

Plaintiff Patricia L. Williams is a 62 year-old female with a ninth grade education. Her past work experience includes work as a waitress. Between 2000 and 2004, she

was diagnosed with the following conditions: Autoimmune Hepatitis (Autoimmune Liver Disease with Cirrhosis of the Liver), Diabetes (insulin dependant), Chronic Abdominal Pain, Chronic Musculoskeletal Pain, Hypertension, Metabolic Syndrome, Diabetic Neuropathy, Osteoporosis, Elevated Liver Functional Test, Gastroesplagel Reflux Disease, Colon Polyps, Ankle Edema, Memory Impairment, Spodylopathy, Depression, and Morbid Obesity, among other diagnoses.

On March 7, 2002, Plaintiff applied for a period of disability and disability insurance benefits, claiming a disability onset date of March 3, 2000. After the Social Security Administration denied Plaintiff's benefits application initially and upon rehearing, she requested a hearing before an Administrative Law Judge (ALJ). Thereafter, the ALJ held two hearings and issued a decision finding that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final order of the Social Security Commissioner, and Plaintiff sought review in this Court.

**ANALYSIS**

I. **Standard of Review**

Judicial review of social security cases is limited to the question of whether the agency's factual findings are supported by "substantial evidence" and whether the

Commissioner has applied the correct legal standards in reaching his decision. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is something "more than a mere scintilla, but less than a preponderance." Dyer, 395 F.3d at 1210. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982)(quoting NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292, 300, 59 S. Ct. 501, 83 L. Ed. 660 (1939)). If a decision is supported by substantial evidence, a reviewing court must affirm the decision "even if the proof preponderates against it." Dyer, 395 F.3d at 1210 (quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

Like the ALJ, the court must consider the evidence as a whole, including objective medical facts or clinical findings, diagnoses of examining physicians, subjective evidence of pain and disability as testified to by the claimant and corroborated by others, and claimant's age, education, and work history. Walden, 672 F.2d at 839. But the court must not reweigh the evidence or render its own decision on the facts. Id. Instead, the court's role is merely "to ensure that the decision was based on a

reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts." Parker v. Bowen, 788 F.2d 1512, 1521 (11th Cir. 1986).

## II. The ALJ's Findings

The Commissioner of Social Security has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). The first step determines whether the claimant is engaged in "substantial gainful activity." Id. If the claimant is not engaged in such activity, then the second determination is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140-141. If the impairment is severe, the third inquiry is whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to prevent substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips, 357 F.3d at 1238. If the impairment does not meet or equal a listed impairment, the fourth and fifth steps determine whether the impairment prevents the claimant from performing past relevant work or making adjustments to other work in the national economy,

4

respectively. Id. at 1238-39. These inquiries require the establishment of the claimant's residual functional capacity.

In cases involving testimony of pain and other symptoms, a claimant must show the following: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002)(citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "If a claimant testifies as to his [or her] subjective complaints of disabling pain and other symptoms . . . , the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer, 395 F.3d at 1210 (citing Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).

In the instant case, the ALJ found at step one that Plaintiff was not engaged in substantial gainful activity. At steps two and three, the ALJ found that Plaintiff's impairments were "severe" impairments under the Act but that they did not medically equal a listed impairment. In step four, the ALJ found that Plaintiff maintained the

residual functional capacity to perform light to medium level work. He then concluded that she could perform past relevant work as a waitress.

### III. The ALJ Failed To Consider All Of The Relevant Evidence

In this appeal, Plaintiff argues that the ALJ failed to give proper weight to the opinions of her physicians. Her primary treating physician, Dr. James Snow, a doctor with the Darien Family Care Center, wrote a letter to the Commissioner opining that Plaintiff is "totally disabled" due to her various diagnoses and the "chronic pain" and "depression" associated with them. (R. at 211.) Plaintiff's other treating physician, Dr. John Northup, a gastroenterology specialist, gave his opinion that she was "totally and permanently disabled" as a result of her autoimmune liver disease, among other conditions. Finally, Dr. McKee Hargrett examined Plaintiff once or twice a week for six weeks and appeared as Plaintiff's medical expert at a hearing before the ALJ. Dr. Hargrett testified that his findings were consistent with those of Drs. Snow and Northup and that he also considered Plaintiff to be totally and permanently disabled. (R. at 532.) He also testified that her pain and fatigue were compatible with the results of objective tests, such as a liver biopsy. (R. at 533.)

In his decision, the ALJ gave no weight to the opinions of these physicians that Plaintiff was totally and permanently disabled. The ALJ stated, "Such statements <u>cannot be considered as evidence</u> because this decision is reserved to the Commissioner of Social Security." (R. at 15)(<u>citing</u> Social Security Ruling 96-5p)(emphasis added). Instead, the ALJ gave "controlling weight" to the opinion of a consultative examiner, Dr. Neal Boswell, who examined Plaintiff once on August 28, 2003 and found that she could perform light to medium work. (R. at 17.)

The ALJ's reason for rejecting the physicians' opinions is inconsistent with the Social Security Administration Regulations. Social Security Ruling 96-5p states:

> [O]pinions from any medical source about issues reserved to the Commissioner <u>must never be ignored</u>, and [the] notice of the determination or decision must explain the consideration given to the treating source's opinion(s).
> . . .
> Medical sources often offer opinions about whether an individual who has applied for Title II or Title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. <u>Such opinions on these issues must not be disregarded.</u> However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

7

(emphasis added); accord 20 C.F.R. § 404.1527 (Physician opinions about matters reserved to the commissioner will receive no "special significance."). Therefore, although the ALJ is correct in finding that these opinions were entitled to neither controlling weight nor special significance, the ALJ erred when he stated that they could not be considered as evidence. On the contrary, the ALJ was required to consider the evidentiary value of these opinions.

On a later page of his decision, the ALJ briefly gave other reasons for rejecting these opinions: that they contradict portions of the medical evidence and that they are inconsistent with Plaintiff's daily life activities (discussed below). But after the ALJ specifically stated – three times – that the opinions could "not be accepted as evidence" and "must" be rejected, the Court cannot find that the opinions were given fair consideration. Because the ALJ did not apply the correct legal standards in rejecting this evidence, the decision of the Commissioner must be reversed.[1]  See Parker, 788 F.2d at 1521 (court must

---

[1] Cyndi Faudree, a nurse practitioner associated with Dr. Snow in Darien, also wrote a letter stating that Plaintiff was "totally disabled due to her chronic and acute pain syndrome." (R. at 209.) The ALJ also refused to consider this opinion as evidence, stating, "[T]he nurse practitioner opinion is not an acceptable medical source."

8

ensure that the decision was "carefully considered in light of all the relevant facts").

## IV. The ALJ Considered Irrelevant Evidence

At each stage of the proceedings, the ALJ, Plaintiff's attorney, and the Magistrate Judge have recognized that the record in the case includes some medical records that belong to a different claimant, Patricia Ann Williams, and not to Plaintiff Patricia L. Williams. Patricia Ann Williams was a school bus driver who suffered from back pain after she was involved in an automobile accident.

To support his decision in this case, the ALJ cited and concurred with the findings of the State Agency medical consultant, Dr. Charles Bailey. (R. at 175-183.) A review of Dr. Bailey's report shows that he considered mixed-up records involving both Patricia Williamses. (R. at 183.) In addition, the ALJ's decision occasionally discusses medical findings that do not apply to Plaintiff Patricia L. Williams, including "posterior lumbar interbody fusion" and "x-rays showed fusion okay." (R. at 14, 16.)

---

(R. at 15.) Although the ALJ was not <u>required</u> to consider this opinion, the regulations state that a nurse practitioner is a "medical source" that "we may also use [as] evidence . . . to show the severity of your impairment(s) and how it affects your ability to work." C.F.R. § 404.1513(d).

9

Although this confusion, standing alone, may not warrant a reversal of the ALJ's decision, it contributes to this Court's finding that the ALJ did not properly consider the <u>relevant</u> evidence in reaching his decision regarding Patricia L. Williams.

V. <u>The ALJ Failed To Provide Adequate Reasons For Discrediting Plaintiff's Allegations Of Disabling Symptoms</u>

One of the primary rationales for the ALJ's decision was his determination that Plaintiff was not credible. He found that her complaints of pain, fatigue, and other symptoms were incompatible with her daily life activities. Although it is the ALJ's duty to consider a claimant's credibility, the ALJ in this case mischaracterized both Plaintiff's complaints of pain <u>and</u> the extent of her daily life activities when deciding that she was not credible.

According to the ALJ, Plaintiff stated that "she has been in awful, continuous back pain since 2000 with no relief." (R. at 17.) But after a review of the record, the Court has not found any evidence that Plaintiff ever claimed to suffer from such debilitating back pain. Perhaps not coincidentally, the other Patricia Williams had complained to her doctors of "intractable" back pain. (R. at 109.) Neither at the hearing nor in her application did this Plaintiff claim that her back pain was "awful,"

10

"continuous," and "since 2000 with no relief." At the hearing, she stated that her back pain began in 2000, but she attributed her practical limitations to a combination of fatigue, pain, and side effects of medication. (R. at 507-512.)[2]

The ALJ then determined that Plaintiff and her medical expert were not credible, because "awful, continuous back pain" was inconsistent with her admitted daily life activities of light cooking, dishes, laundry, and occasional driving. The ALJ stated:

> Claimant was reasonably forthright on her activities of daily living, but then she did not tell the truth (compare Exhibit 6F/8, 6F/11, 6F/26 and 6F/28) when she claimed she has been in awful, continuous back pain since 2000 with no relief. Absurd! How could she do her admitted activities of daily living now . . . in constant pain? Claimant's husband contradicted her on about every other point she made. Moreover, claimant's medical records cited above in Exhibit 6F show good pain relief.
>
> Dr. McKee Hargrett testified as claimant's medical expert. . . . His testimony self destructed when he opined that claimant would not do the activities of daily living she had admitted.

---

[2] The ALJ did not cite to any specific pages in the 545-page record to support his characterization of Plaintiff's alleged pain symptoms. One of the more severe characterizations in the record describes the pain as "shooting" and "just hurting when she wants to move," while also noting that she gets "some relief" from medication. (R. at 191-92.) But even this description falls short of the ALJ's characterization of her alleged pain.

11

(R. at 16-17)(emphasis in original.)

But this analysis exaggerates the extent of Plaintiff's "admitted activities of daily living." According to her testimony at the hearing, she does not do "much at all" during the day or to help around the house. (R. at 507.) Her "cooking" consists of the following:

> "I fix cereal or something when [my husband is] not home. . . . And once in a while if I go to the freezer and get something out, you know, some beans or vegetables or something and put them in a pot on the stove. I try to help him, but I just can't hold out to it like I used to. I'm scared, he's scared that I'll get burned also, you know."

(R. at 507-508.) Her help with the laundry and dishwashing includes:

> Everyone once in awhile, I'll pick up a few clothes and throw them in the washer - my clothes. I don't mess with his because they're just, you know. But I have put dishes in the dishwasher at times, not a lot of times.

(R. at 507.) When asked if she ever drove, Plaintiff stated that she had driven ten miles to the doctor's office, on one occasion, several months prior to the hearing, when her husband was unavailable to take her. (R. at 510.)

Plaintiff's husband testified that she performed very few daily activities and that he did almost all of the cooking, dishwashing, and laundry. (R. at 517-18.) He

stated that she used to drive, but does not anymore, and that he was not aware of her driving at all in the last three months. (R. at 520.)

At a subsequent hearing, Dr. Hargrett described Plaintiff's diagnoses, and the ALJ questioned him about whether a person with Plaintiff's conditions would be able to perform daily life activities such as cooking, dishwashing, laundry, and driving. Dr. Hargrett testified that a person in Plaintiff's condition "probably could" perform those activities, but that it would be infrequent, not recommended, and "too uncomfortable an experience." (R. at 540-41.)

Under this Court's reading of the testimony, Plaintiff did not claim to perform activities such as cooking, dishes, and laundry on a regular or "daily" basis. Instead, she testified that these activities were difficult to perform. The testimony of her husband and Dr. Hargrett supports this reading. If an activity is performed infrequently and only with extreme difficulty, the fact that a plaintiff can perform it is not inconsistent with allegations of fatigue, pain, or other symptoms. There is no requirement that a claimant show complete incapacitation in order to be deemed credible when complaining of pain and other symptoms. Although there will always be some

13

inconsistency in the testimony of witnesses, nothing in this case rises to the level of "self-destruct[ing]," "contradict[ing] every other point," or "Absurd!".

Therefore, the Court finds that the ALJ did not clearly articulate explicit and adequate reasons for discrediting Plaintiff's allegations of disabling symptoms, particularly when those symptoms were supported by the opinions of Plaintiff's two treating physicians and the testimony of her medical expert. See Dyer, 395 F.3d at 1210.[3]

It is the ALJ's province, and not that of this Court, to consider individual pieces of evidence in arriving at a determination regarding disability. In this case, the Court acknowledges that there is some evidence tending to support the ALJ's decision, including the consultative report of Dr. Boswell, reports of pain management, and notations in Plaintiff's medical records that she was

---

[3] An ALJ's poorly articulated credibility determination will not always require a reversal, particularly where the final decision is supported by other evidence. And, of course, a credibility finding by a trier of fact is owed special deference. Parker, 788 F.2d at 1521. But in this case, a suspect credibility determination played a very large role in the ultimate decision, because the ALJ declined to consider the opinions of the two treating physicians and Plaintiff's expert. See Parker, 788 F.2d at 1520 (stating that the weight given to a credibility determination will depend on the importance of credibility in that case).

"doing well." (R. at 148, 151, 191-206.)[4] But this evidence must be considered in the context of all of the evidence that the ALJ is required to consider. See Parker, 788 F.2d at 1521; C.F.R. § 404.1520(3)("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.")(emphasis added). In this case, the Court holds that ALJ has neither considered nor impartially weighed all of the evidence to arrive at a reasonable and well-articulated conclusion as to whether Plaintiff is disabled.

## CONCLUSION

For the reasons explained above and pursuant to Sentence Four of 42 U.S.C. § 405(g), this case is **REVERSED** and **REMANDED** to the ALJ for further consideration consistent with this report. The ALJ shall consider all of

---

[4] The ALJ appears to rely heavily on statements in the medical records that Plaintiff was "doing well" or "feeling fine" during various doctor visits. But these subjective statements must be considered in context. For example, Plaintiff saw Dr. Northup on October 25, 2001, and the Progress Notes from the visit state that Plaintiff was "feeling well" and "doing reasonably well." (R. at 373.) But another Progress Note regarding the same office visit mentions "the gravity of her condition" and states that "autoimmune hepatitis is a very serious disease." (R. at 372.)

This Court offers no opinion about what this evidence, and other similar evidence, suggests about the ultimate issue: whether Plaintiff is disabled. But a statement that a patient is "doing well" is relative to the condition for which the patient is being treated and must be considered in that context.

15

the relevant evidence, including the opinions of her physicians, but excluding evidence regarding other claimants. If the ALJ finds that Plaintiff is not credible and/or makes a determination contrary to the opinions of her treating physicians, he shall clearly articulate explicit and adequate reasons for doing so. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** consistent with this Order and to **CLOSE** this case.

SO ORDERED this 3rd day of MARCH, 2008.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA